**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **CHAPTER 7** |
| | ) | |
| **WILLIAM JONATHAN KEEN** | ) | **Case No. 13-71705** |
| | ) | |
| Debtor. | ) | |
| **WILLIAM J. KEEN** | ) | |
| | ) | |
| Movant | ) | |
| | ) | **MOTION TO REDEEM PROPERTY** |
| v. | ) | **(Docket Entry No. 115)** |
| | ) | |
| **FIRST SENTINEL BANK** | ) | |
| | ) | |
| Respondent. | ) | |
| **FIRST SENTINEL BANK** | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | **MOTIONS FOR RELIEF FROM** |
| | ) | **AUTOMATIC STAY** |
| **WILLIAM JONATHAN KEEN** | ) | **(Docket Entry Nos. 92, 94, 96 & 98)** |
| | ) | |
| Debtor, and | ) | |
| | ) | |
| **GEORGE A. MCLEAN, JR.** | ) | |
| | ) | |
| Chapter 7 Trustee. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the Motion to Redeem Property filed by the Debtor, William J. Keen (the "Debtor"). Also before the Court are four separate Motions for Relief from the Stay of 11 U.S.C. § 362(a) filed by First Sentinel Bank ("FSB") against the Debtor and George A. McLean, the Chapter 7 Trustee (the "Trustee"). For the reasons set forth

below, the Motion to Redeem will be denied, and the Motions for Relief from Stay filed by FSB will be granted in part and denied in part.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on October 21, 2013.  The Debtor disclosed that, at the time of filing, his "Nature of Business" was "Logging, Trucking and Debris Removal."  *Petition, at pp. 1, 4.*  In addition, the Debtor stated on the face of his petition under the box listed "Nature of Debts" that his debts were "primarily business debts."  *Id.*  Included among his initial filing was a debt to FSB in the amount of $45,000.00, listed as secured by a tractor, baler, and 2006 Ford F-350.  *Initial Schedule D.*  The Debtor valued the tractor, baler, and F-350 on his Schedule D at a collective total value of $12,500.00.  However, on his initial Schedule B, the Debtor valued the tractor and baler at $12,500.00 and the F-350 at $6,500.00, for a total value of these three items of $19,000.00.  *Initial Schedule B.*  The Debtor also listed on his initial Schedule B a 1995 Bass Tracker Pontoon boat having a value of $3,000.00, a 1977 International Truck with a value of $2,000.00, and the following items having a collective total value of $41,000.00:  a 2000 John Deere 650H, a 1999 Cat 320B, and Timberjack Skidder.  *Initial Schedule B.*  The Debtor filed three different Chapter 13 Plans, none of which was confirmed, and on the Debtor's motion, his case was converted on April 16, 2014 to one under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701, *et seq*.  *(Dkt. 55).*

On May 30, 2014, the Debtor filed an Amended Schedule B in his converted Chapter 7 case.  While including some additional items of personal property, he did not alter the values on

---

[1] Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.  *See* Fed. R. Bankr. P. 7052; 9014(c).

2

any of the items listed above. Notably, the Debtor was required under Bankruptcy Rule 1019(1)(B) to file a statement of intention under 11 U.S.C. § 521(a)(2)[2] within 30 days of the order of conversion or before the first date set for the meeting of creditors, whichever was earlier. Fed. R. Bankr. P. 1019(B). However, the Debtor made no such filing. The Chapter 7 meeting of creditors was held on May 29, 2014, and shortly thereafter the Trustee filed an asset notice. *(Dkt. 70).* Subsequently, on August 20, 2014, FSB filed four separate motions for relief from stay against the Debtor and the Trustee. *(Dkt. 92, 94, 96 and 98).* Responses to all of the motions for relief were filed by the Debtor on September 8, 2014. The Debtor's response stated that he intended to file a motion to redeem FSB's collateral, despite having given no previous notice of his intention to do so. The Trustee opposed two of the motions for relief *(Dkt. 92, 94)*

---

[2] Section 521(a)(2) provides as follows:

  **(a)** The debtor shall-- . . .

  **(2)** if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate--

    **(A)** within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and

    **(B)** within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph;

    except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h); . . .

on the ground FSB was not a perfected lienholder on certain items that were the subject of those motions, but the Trustee did not oppose the other two motions and no responses were filed. Hearings on all of the motions for relief from stay were scheduled for September 17, 2014 in Abingdon, Virginia.

On September 16, 2014, the Debtor filed his motion to redeem against FSB. Counsel for the Debtor appeared at the hearing on September 17 and advised the Court that while the Trustee was on vacation, the parties had agreed to continue the motions for relief given the pending motion to redeem. Counsel for FSB did not appear, but counsel for the Debtor represented that he was appearing for him and that he consented to the continuance. All matters were continued for a collective contested hearing on November 19, 2014. FSB never filed a written response to the Debtor's Motion to Redeem,[3] and while the parties attempted to resolve the various motions prior to the hearing on November 19, 2014, only FSB and the Trustee were apparently able to resolve their differences as to what FSB had a perfected lien upon. No resolution was reached between the Debtor and FSB as to the Motion to Redeem.

The Motion to Redeem sought to redeem the following property for the collective total sum of $35,000.00: (1) 1994 Chevrolet truck, (2) 1999 International truck, (3) 2006 Pitts log trailer, (4) 2006 Imperial dump trailer, (5) Ford 5640 farm tractor, (6) New Holland round baler, (7) 1997 Blondie trailer, (8) 1997 Sopko trailer, (9) 1991 Kenworth tractor, (10) 1985 Daco trailer, (11) 2006 Ford F-350 truck, (12) 2002 John Deere 650-H crawler dozer with forestry package, (13) 1986 International truck with Prentice grapple, (14) 1977 International truck, (15) 1999 Western Star truck, (16) 2003 John Deere 648-G skidder, (17) 1997 Prentice D-210-B

---

[3] Counsel for FSB is reminded of Local Rule 9013-1(M), which allows the Court to treat a motion as uncontested when the opposing party fails to file a timely response.

4

loader, (18) 1989 Mack truck, (19) 1999 excavator, (20) 1996 Timberjack skidder, (21) 2000 Ford Excursion, (22) 1972 Load lowboy, and (23) 1995 Bass Tracker boat and trailer.  As counsel for FSB correctly observed at the hearing, many of these items are nowhere to be found in the Debtor's schedules.

FSB's first motion for relief seeks relief from stay against the Debtor in connection with the following items:  the 2006 Ford F-350 truck, the 2002 John Deere 650-H crawler dozer with forestry package, the 1986 International truck with Prentice grapple, the 1977 International truck, the 1999 Western Star truck, the 2003 John Deere 648-G skidder, the 1997 Prentice D-210-B loader, the 1989 Mack truck, the 1999 excavator, the 1996 Timberjack skidder, the 2000 Ford Excursion, the 1972 Load lowboy, and the 1995 Bass Tracker boat and trailer.  At the hearing, FSB conceded to the Trustee that it did not have perfected liens on the 1999 International truck, the 1977 International truck, the 1986 International truck with Prentice grapple, and the boat trailer, and it represented that it would not pursue those items from the estate.  FSB contends the remaining items secure repayment of a debt of the Debtor evidenced by a Promissory Note dated June 30, 2011 in the original principal amount of $82,219.12, upon which there remained a balance as of the date of the petition filing of $47,962.70.  *(Dkt. 92, ¶5).*  Although FSB failed to comply with the Court's Pre-Hearing Order and file the required certifications in advance of trial, the Debtor did not dispute the balance due in his response.[4]  The Debtor also did not dispute FSB's allegations that the Debtor did not have an equity in the foregoing property, that the property was not necessary to an effective reorganization of the Debtor, and that the Debtor's

---

[4] All sides in this dispute failed to comply with both the letter and spirit of the Court's pre-hearing orders, including filing the required certifications and marking and pre-filing exhibits, which made the case much harder for the Court to resolve.  Both counsel for FSB and counsel for the Debtor are put on notice that such future ill-preparation and non-compliance will not be tolerated, and appropriate sanctions may issue.

5

schedules of assets and expenses reflect that the Debtor is unable to cure the arrearages, which have continued to increase since filing. *(Dkt. 92, ¶6; Dkt. 109).*

FSB's second motion for relief seeks relief from stay against the Debtor in connection with the following items: 1994 Chevrolet truck, 1999 International truck, 2006 Pitts log trailer, 2006 Imperial dump trailer, Ford 5640 farm tractor, and New Holland round baler. FSB contends these items were pledged by the Debtor to FSB under a Commercial Security Agreement dated April 16, 2012 executed by the Debtor to secure repayment of the indebtedness of Fire and Ice Trucking, Inc., a corporation owned by the Debtor and through which he conducted business at the time the loan was made. The security agreement pledged all equipment owned by the Debtor, including the specific equipment above, as security for all debts of Fire and Ice Trucking, Inc. to FSB. In addition, the Commercial Security Agreement expressly provided under "Use of Property" that the property will be used for business and agricultural purposes. There was also a box for personal use, but it was not checked. FSB asserts the foregoing collateral secured repayment of a debt of the Debtor evidenced by a Promissory Note dated April 16, 2012 in the original principal amount of $35,308.00, upon which there remained a balance as of the date of the petition filing of $36,595.93. As with the first motion, the Debtor also did not dispute FSB's allegations that the Debtor did not have an equity in the foregoing property, that the property was not necessary to an effective reorganization of the Debtor, and that the Debtor's schedules of assets and expenses reflect that the Debtor is unable to cure the arrearages, which have continued to increase since filing. *(Dkt. 94, ¶6; Dkt. 110).*

FSB's third motion for relief seeks relief from stay against the Debtor in connection with the following items: a 1997 Blondie trailer and a 1997 Sopko trailer. These items were pledged

6

by Fire and Ice Trucking, Inc. to FSB under a Commercial Security Agreement dated June 13, 2012, executed by Fire and Ice Trucking to secure repayment of the indebtedness of Fire and Ice Trucking. The Commercial Security Agreement expressly provided under "Use of Property" that the property will be used for business purposes. FSB asserts that this collateral secures repayment of a debt of Fire and Ice Trucking evidenced by a Promissory Note dated June 13, 2012 in the original principal amount of $8,940.00, upon which there remained a balance as of the date of the petition filing of $7,108.44. Presumably, the Debtor is in possession of these trailers, and that is why FSB seeks relief from stay against the Debtor, as the attachments to this motion for relief plainly show that these trailers are owned by Fire and Ice Trucking as collateral for debt of Fire and Ice Trucking. The attachments further reflect that ownership of each of these trailers is by certificate of title, and FSB has provided no evidence of perfected liens on any titles for these trailers. However, as Fire and Ice Trucking is not in bankruptcy, the rights of the Trustee are not implicated and the security agreement as between FSB and Fire and Ice Trucking is operative as between them. Perfection as to third parties may be a different issue. In any event, the Debtor also did not dispute FSB's allegations that the Debtor did not have an equity in the foregoing property, that the property was not necessary to an effective reorganization of the Debtor, and that the Debtor's schedules of assets and expenses reflect that the Debtor is unable to cure the arrearages, which have continued to increase since filing. *(Dkt. 96, ¶6; Dkt. 111).*

FSB's last motion for relief seeks relief from stay against the Debtor in connection with the following items: 1991 Kenworth tractor and a 1985 Daco trailer. These items were pledged by the Debtor to FSB under a Commercial Security Agreement dated August 3, 2012 executed by the Debtor to secure repayment of the indebtedness of Fire and Ice Trucking. The security agreement pledged all equipment owned by the Debtor, including the specific equipment above,

as security for all debts of Fire and Ice Trucking, Inc. to FSB.  In addition, the Commercial Security Agreement expressly provided under "Use of Property" that the property will be used for business purposes.  Like the other commercial security agreements, there was also a box for personal use, but it was not checked.  The foregoing collateral secured repayment of a debt of the Debtor evidenced by a Promissory Note dated August 3, 2012 in the original principal amount of $10,310.00, upon which there remained a balance as of the date of the petition filing of $10,650.32.  As with the previous motions, the Debtor did not dispute FSB's allegations that the Debtor did not have an equity in the foregoing property, that the property was not necessary to an effective reorganization of the Debtor, and that the Debtor's schedules of assets and expenses reflect that the Debtor is unable to cure the arrearages, which have continued to increase since filing.  *(Dkt. 98, ¶6; Dkt. 112).*

While the Debtor, the Trustee, and FSB all appeared to assume that FSB had a security agreement securing repayment of the Keen Note upon which the first motion for relief was filed, no such security agreement was ever introduced into evidence.  It was not filed with the motion, nor was it introduced at trial.  While the Note says that the debt evidenced by the note is secured by a security agreement dated August 30, 2011 in the amount of $82,219.12, FSB only attached financing statements to the motion.  There was also a Cross-collateral Addendum dated June 30, 2011 filed with the first motion for relief, but it too references a security agreement of the same date that was never produced at trial or made part of the record.[5]  Insofar as the collateral in the first motion is concerned, there is no evidence before the Court it is collateral for the Keen Note,

---

[5] The Keen Note reflects on its face that its purpose was to "Refinance Existing Loan."  Presumably, since the Keen Note was dated August 30, 2011, the previous note was made by Keen as well.  There were financing statements filed on the same collateral by FSB, and submitted with its motion for relief, reflecting a debtor name of C&A Logging, Inc., but whether C&A Logging, Inc. owns or owned any of this collateral is unclear.  It is also unclear why FSB filed these financing statements with its motion for relief, as (other than the collateral description) they match up to nothing else in the record.

8

which evidenced a loan made to Keen individually. However, taking the notes, security agreements, and financing statements together, all equipment of the Debtor, William J. Keen, was plainly pledged as collateral security for the debts of Fire and Ice Trucking to FSB up to the limits of Fire and Ice Trucking's debt and to the extent of perfection under applicable state law. The Debtor's signature on each security agreement FSB did introduce reflects that all property pledged as collateral for Fire and Ice debt was to be used for business purposes. However, just because FSB was granted a blanket lien on Keen's equipment in its security agreements, does not mean it has a perfected lien. If FSB has a blanket UCC filing against the Debtor's equipment, it did not introduce it into evidence. The only financing statements introduced were as to specific pieces of collateral and to certain trailers that are covered by certificates of title.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that these matters are "core" bankruptcy proceedings within the meaning of 28 U.S.C. § 157(b)(2)(G).

11 U.S.C. § 722 provides as follows:

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under Section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

11 U.S.C. § 722. In turn, Federal Rule of Bankruptcy Procedure 6008, which governs redemption of property from lien or sale, provides:

> On motion by the debtor, trustee, or debtor in possession and after hearing on notice as the court may direct, the court may authorize the redemption of property from a lien or from a sale to enforce a lien in accordance with applicable law.

Fed. R. Bankr. P. 6008.  Under Section 722, the Debtor, as movant, bears the burden of proof by a preponderance of the evidence.  *In re Campbell*, No. 03-06108-LMJ7, 2006 WL 4472584, at *2, 2006 Bankr. LEXIS 4170, at *4 (Bankr. S.D. Iowa Oct. 2, 2006).  Although most courts speak of the burden of proof in terms of valuation under Section 722, the Debtor as moving party has the burden of proof on all elements to establish his entitlement to redemption, especially when the Debtor asserts on the Petition, as he did here, that his debts are "primarily business debts."  *See, e.g., In re Brown*, 244 B.R. 603 (Bankr. W.D. Va. 2000).

If the property sought to be redeemed does not secure a dischargeable consumer debt, the Debtor is not entitled the relief Section 722 affords.  "The debt secured by the lien must be a consumer debt."  Vol. # 6 *Collier on Bankruptcy* ¶ 722.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *In re Boitnott,* 4 B.R. 122 (Bankr. W.D. Va. 1980).  As defined in the Bankruptcy Code, "[t]he term 'consumer debt' means debt incurred by an individual primarily for personal, family, or household purpose."  11 U.S.C. § 101(8).  Here, despite the belief of both the Debtor and FSB to the contrary, the Court has no evidence that the Debtor's various pieces of equipment secure anything other than the debt of Fire and Ice Trucking, Inc., the Debtor's commercial enterprise.   The Court was not provided with a security agreement from the Debtor to secure repayment of the Note he made personally, either in connection with the Motion to Redeem or the Motions for Relief from Stay.  The only security agreements introduced or relied upon by either party secure the debt of Fire and Ice Trucking, not the Debtor.

Even if there was a security agreement, the Court is not persuaded by the Debtor's testimony that this collateral secured repayment of a consumer debt.  The Debtor's petition

reflects that, by his own admission, his debts were primarily business debts, and the loan documents seem to support that statement, particularly where the only security agreements made part of the record indicate on their face the property pledged as collateral is to be used for business purposes. There was an opportunity to check "personal," which may have lent at least some credibility to the Debtor's contention that the equipment was for personal use, but that was not done -- apparently on purpose. Further, the Court found the Debtor's testimony on the use of the equipment and the purpose of the loans to be self-serving and evasive, especially when pressed by counsel for the Bank as to the nature of the loans when they were made. To successfully invoke Section 722, a debtor must prove both that (i) the property sought to be redeemed was "intended primarily for personal, family, or household use," and that it is subject to a lien "securing a dischargeable consumer debt." 11 U.S.C. § 722. Given the evidence at trial, neither element was met here. As a result, the Motion to Redeem will be denied.[6]

The Court now turns to the Motions for Relief from Stay. If FSB has produced no security agreement from Keen to secure Keen's debt to the bank, what does the evidence show FSB to have a perfected lien upon? Ordinarily, challenges to the validity, priority, and extent of liens must be brought by adversary proceeding. Fed. R. Bankr. P. 7001. However, "the validity of the movant's lien is a critical issue in stay modification proceedings that involve collateral that is property of the estate." *In re Suddarth*, 222 B.R. 352, 353 (Bankr. N.D. Okla. 1998). Most courts require that, in the summary nature of stay proceedings, the movant show at least a

---

[6] Given that the requirements of Section 722 were not met, the Court need not assign values to the Property the Debtor seeks to redeem. The Court notes that while the Debtor moved to redeem all of the property for a lump sum at trial, his own valuations, both in terms of his testimony at trial and in his schedules, placed higher values on the equipment than what his motion collectively requested. This is troubling, in that it is well established that statements contained in the schedules of a bankruptcy debtor can constitute binding admissions of the factual matters set forth in such schedules, especially when they have not been amended. Russell, *Bankruptcy Evidence Manual*, §§ 801.13, 801.22 (2011-12 ed.). Further, while the Debtor made a lump sum redemption request in his Motion to Redeem, the Debtor asked at trial that the Court assign specific values to specific pieces of equipment – none of which he gave FSB information about prior to the hearing. The Court declines that invitation.

"colorable" claim to property of the estate. *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990). As a creditor seeking relief from stay, FSB "has the burden of showing the existence, the validity, and the perfection of its secured claim against the Property." *In re Pelham Enters., Inc.*, 376 B.R. 684, 689 (Bankr. N.D. Ill. 2007). As stated in *Pelham*, "[r]egardless, the focus for purposes of this motion is a determination of whether the Creditor has established, by a preponderance of the evidence, a colorable claim to the security interests against the Property; whether cause is present to lift the stay as to the Property; and whether the bankruptcy estate has equity in the Property." *Id.* at 690; *In re Vitreous Steel,* 911 F.2d at 1232, 1234.

This is not a run of the mill motion for relief from stay. This case is the Debtor's second filing in the last two years. The Debtor's current bankruptcy case was filed over a year ago and was before the Court multiple times in Chapter 13 confirmation with the participation of FSB. The Chapter 7 meeting of creditors was held over 5 months ago, and the Motions for Relief and the Motion to Redeem have been continued so the parties can try and resolve matters, with the active involvement of the Chapter 7 Trustee. To say the parties have had a full and fair opportunity to litigate and prepare for resolution of the various matters before the Court is an understatement.

While the parties announced at the hearing that they had reached agreement as to the extent of FSB's lien on four pieces of equipment, state law ultimately determines whether a valid security interest exists in the property. *Pelham,* 376 B.R. at 689 (*citing Butner v. United States,* 440 U.S. 48, 54-57, 99 S.Ct. 914 (1979)). The Court was provided no blanket UCC filing on "all equipment" of the Debtor. However, there are certificates of title with liens noted upon them or UCC filings against specific pieces of equipment that match up with security agreements

12

provided. Specifically, the Court has a title for a 1985 Daco trailer and a 1991 Kenworth tractor. These titles were attached to the motion for relief at docket entry 98. The Daco trailer and Kenworth tractor were pledged as collateral security for all debts of Fire and Ice Trucking to FSB. *See, Security Agreement dated August 3, 2012. (Dkt. 98).* The Court will grant relief from stay to FSB against these two items of collateral, but only to the extent these items secure repayment of Fire and Ice Trucking's indebtedness to FSB.

In addition, the Court was provided a UCC filing dated July 27, 2011 (No. 1107273814-1) with the first motion for relief at docket entry 92. This is the only financing statement supporting any of FSB's motions for relief from stay filed against the Debtor.[7] The financing statement covers the following collateral: (i) a 2006 Ford F-350, VIN # 1FTWW31P96EC23218, (ii) a 2002 John Deere 650-H crawler dozer with forestry package, X886478, (iii) a 1986 International truck with Prentice grapple, VIN #2HSFBJWR1HC086057, (iv) a 1977 International truck, VIN # D3117GGB27398, (v) a 1999 Western Star, VIN # 2WKEEDDJH9XK957050, (vi) a 2003 John Deere 648G skidder, VIN #DW648GX585833, (vii) a 1997 Prentice loader DZ10B, VIN # Z10P22784, (viii) 1989 Mack truck, VIN # 2M2P179C0KC004039, (ix) 1999 excavator, VIN # 6CR4132, (x) 1996 Timberjack skidder, VIN # 962517, (xi) 2000 Ford Excursion, VIN # 1FMNU43S7YED09148, (xii) 2001 Dodge Ram, VIN # 3B7HF13YX1G213589, (xiii) 1972 Load lowboy, VIN # FTD40T220, and (xiv) 1995 Bass Tracker, VIN # BUT1315E595. FSB produced no titles with liens noted upon them against any of the motor vehicles or trailers noted above. In Virginia, unless it is inventory held for sale, vehicles covered by a certificate of title must have a lien noted upon the title to perfect

---

[7] As indicated previously, FSB filed with the Court financing statements against C&A Logging, Inc. It also filed a financing statement against Fire and Ice Trucking, Inc., and all three financing statements, including the one against the Debtor, are against the exact same items. No security agreements were provided to the Court except the ones that secure the debts of Fire and Ice Trucking to FSB.

13

the security interest.[8]  Specifically, Va. Code § 46.2-637 provides, in part, that "[s]ecurity interests, other than those in inventory held for sale, in motor vehicles, trailers, or semitrailers created by the voluntary act of the owner after the original issue of a certificate of title to the owner must be shown on the certificate of title."  Va. Code Ann. § 46.2-637.  Given the Virginia statutes, the filing provisions of UCC Article 9A simply do not apply to the vehicles and trailers in this case.[9]  Absent liens noted on the certificates of title, a UCC filing by FSB did not create a perfected lien in the Debtor's motor vehicles and trailers.  In addition, the Bass Tracker boat would appear to be covered by a certificate of title as well.[10]  *See Beacon Light Marina Yacht Club, Inc.*, 125 B.R. 154 (Bankr. W.D. Va. 1990).  FSB provided no title to the boat with a lien noted thereon.  As a result, neither the motor vehicles, trailers, nor the Bass Tracker boat above have perfected liens in favor of FSB, and relief from stay will be denied as to each of those items.  Relief from stay will be granted against the 2002 John Deere 650H crawler dozer with forestry package X886478, the 2003 John Deere 648G skidder, the 1997 Prentice loader, the

---

[8] Section 46.2-638 of the Virginia Code provides as follows:  "A certificate of title, when issued by the Department showing a security interest, shall be adequate notice to the Commonwealth, creditors, and purchasers that a security interest in the motor vehicle exists and the recording or filing of such creation or reservation of a security interest in the county or city wherein the purchaser or debtor resides or elsewhere is not necessary and shall not be required.  Motor vehicles, trailers or semitrailers, other than those which are inventory held for sale, registered or for which a certificate of title shall have been issued under this title shall not be subjected to, but shall be exempt from the provisions of §§ 8.9A-301 through 8.9A-527 and § 55-96, nor shall recordation or filing of such security interest, except a security interest in inventory held for sale, in any other place for any other purpose, be required or have any effect."

[9] Section 8.9A-303(c) of the Virginia Code provides as follows: "Applicable law. The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title."

[10] In pertinent part, Section 29.1-722.15 of the Virginia Code provides as follows:  "A. Except as otherwise provided in this section or § 29.1-733.29, a security interest in a watercraft shall be perfected only by delivery to the Department of an application for a certificate of title that identifies the secured party and otherwise complies with § 29.1-733.7.  The security interest is perfected on the later of delivery to the Department of the application and the applicable fee or attachment of the security interest under § 8.9A-203."

14

1999 excavator, and the 1996 Timberjack skidder, but again, only to the extent these items secure repayment of Fire and Ice Trucking's indebtedness to FSB.[11]

FSB also claims a security interest in, and seeks relief from stay to recover, a 1994 Chevrolet truck, VIN # 1GBL7H1P4RJ109320, a 1999 International truck, VIN # 2HSFHAER5XC050225, a 2006 Pitts log trailer, VIN # 5JYLP422X6P061370, a 2006 Imperial dump trailer, VIN # 1Z9GN20216J213518, a Ford 5640 farm tractor, and a New Holland baler. *(Dkt. 94)*.  No titles were produced showing the bank's lien upon the Chevrolet truck, the International truck, Pitts log trailer, or the 2006 Imperial dump trailer.  In addition, the bank produced no filed UCC-1 financing statement covering the Ford 5640 farm tractor or the New Holland baler.  FSB's Motion for Relief from Stay will be denied as to all of these items.

Last, FSB moves for relief against a 1997 Blondie trailer and a 1997 Sopko trailer.  (*Dkt. 96*).  The security agreement produced by the bank reflects that the party pledging these trailers as collateral for the debt of Fire and Ice Trucking was in fact Fire and Ice Trucking, <u>not</u> the Debtor.  The titles that were attached to this motion for relief appear to be bank-owned or "repo" titles that were endorsed over to Fire and Ice Trucking, Inc. as buyer from the bank.  However, despite the apparent intent that the bank be listed as lien holder when the new titles were issued, new titles were not introduced, if ever issued.  Because Fire and Ice Trucking is not before the Court, relief from stay will be granted only to the extent that these trailers are in the Debtor's possession such that FSB may exercise its available rights against those trailers.

---

[11] While FSB produced no security agreement granting the bank a security interest in these specific items of equipment, FSB has a security interest in these items under the blanket grant of a security interest in the April 16, 2012 and August 3, 2012 security agreements from the Debtor.

## CONCLUSION

For all of the above reasons, the Motion to Redeem is denied, and the Motions for Relief from Stay will be granted in part and denied in part to the extent set forth above. An appropriate order will issue.

Decided this 3rd day of December, 2014.

_____
UNITED STATES BANKRUPTCY JUDGE